J. A04008/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :  IN THE SUPERIOR COURT OF
             :     PENNSYLVANIA
      v.     :
             :
JAMES E. MASKIL, JR.,    :   No. 2066 WDA 2014
             :
     Appellant  :


Appeal from the Order, November 20, 2014,
in the Court of Common Pleas of Washington County
Criminal Division at No. CP-63-CR-0000873-2013


BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND SHOGAN, J.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED APRIL 25, 2016**

  James E. Maskil, Jr., appeals from the November 20, 2014 order entered in the Court of Common Pleas of Washington County that classified him as a sexually violent predator ("SVP").  We affirm.

  The record reflects that appellant was charged with one count each of involuntary deviate sexual intercourse with a child, indecent assault with a person less than 13 years of age, corruption of minors, and endangering welfare of children.[1]  The charges resulted from allegations by the minor victim, who was the daughter of appellant's live-in girlfriend and who also lived in the home, that appellant and his minor son forced her to engage in sexual acts from the time that she was approximately 7 years old until she

---

[1] 18 Pa.C.S.A. § 3123(b), 18 Pa.C.S.A. § 3126(a)(7), 18 Pa.C.S.A. § 6301(a)(1)(ii), and 18 Pa.C.S.A. § 4304(a), respectively.

was approximately 14. At the relevant times, appellant was approximately 36 to 43 years old.

After pleading no contest to one count of corruption of minors and one count of endangering welfare of children, the trial court ordered appellant to be assessed by the Sexual Offender Assessment Board ("SOAB") to determine whether he met the SVP criteria. The court also sentenced appellant to 6 to 23 months of electronic home monitoring on the corruption count and a consecutive 3-year term of probation on the endangering welfare of children count. In return for his plea, the Commonwealth **nolle prossed** the other two charges. Following the SVP hearing, the trial court entered an order classifying appellant as an SVP. This appeal followed.

Appellant raises one issue for our review:

> WHETHER THE HONORABLE TRIAL COURT ERRED IN CLASSIFYING THE APPELLANT AS A SEXUALLY VIOLENT PREDATOR WHERE THE COMMONWEALTH FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT IS A SEXUALLY VIOLENT PREDATOR PURSUANT TO 42 PA. C.S.A. § 9799.12, WHERE THE COMMONWEALTH PRESENTED INSUFFICIENT EVIDENCE AT THE HEARING TO DETERMINE WHETHER THE TRIAL COURT SHOULD CLASSIFY THE APPELLANT AS A SEXUALLY VIOLENT PREDATOR?

Appellant's brief at 3.

The standards governing our review of the sufficiency of the evidence with respect to an SVP determination are well established:

> A challenge to the sufficiency of the evidence is a question of law subject to plenary review. We must

> determine whether the evidence admitted at [the SVP hearing] and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the [statute]. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.
>
> At a hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. In reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to establish each element required by the statute.

*Commonwealth v. Evans*, 901 A.2d 528, 534 (Pa.Super. 2006), *appeal denied*, 909 A.2d 303 (Pa. 2006) (citations omitted; bracketed information in original).

The Sex Offender Registration and Notification Act, 42 Pa.C.S.A. § 9791, *et seq.* ("SORNA"), defines a "sexually violent predator" as:

> [a] person who has been convicted of a sexually violent offense as set forth in § 9795.1 (relating to registration) and who is determined to be a sexually violent predator under § 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792. SORNA defines "mental abnormality" as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a

menace to the health and safety of other persons." *Id.* In turn, SORNA defines "predatory" as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

Among the relevant sections of SORNA, Section 9795.4 provides:

### § 9795.4. Assessments

**(a)** **Order for assessment.--**After conviction but before sentencing, a court shall order an individual convicted of an offense specified in section 9795.1 (relating to registration) to be assessed by the board. The order for an assessment shall be sent to the administrative officer of the board within ten days of the date of conviction.

**(b)** **Assessment.--**Upon receipt from the court of an order for an assessment, a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means

necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

> > (iii) Any mental illness, mental disability or mental abnormality.
> >
> > (iv) Behavioral characteristics that contribute to the individual's conduct.
> >
> > (4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4. The above section delineates a non-exclusive list of factors to consider in the SVP assessment of a defendant. It cannot be said, however, that each factor will be of relevance in every case or that the presence or absence of any of the enumerated factors will be decisive in the determination. ***Commonwealth v. Meals***, 912 A.2d 213, 222-223 (Pa. 2006).

Here, the trial court conducted the SVP hearing on November 18, 2014. The Commonwealth presented the testimony of Julia Lindemuth, M.S., who has been a member of SOAB since 2010 and who has been treating sexual offenders since 1999. (Notes of testimony, 11/18/14 at 7-8.) An investigator conducted appellant's interview, and Ms. Lindemuth reviewed that evaluation. (***Id.*** at 15-16.) Although Ms. Lindemuth offered appellant an interview on several occasions, he failed to respond. (SVP assessment report, 6/8/14 at 3.) Ms. Lindemuth testified, however, that the investigator's evaluation contained sufficient information

to generate an SVP assessment report. (Notes of testimony, 11/18/14 at 16-17.) The trial court admitted the report into evidence. (***Id.*** at 10.)

In her testimony and in her report, Ms. Lindemuth stated that: the current offense did not involve multiple victims; although appellant did not exceed the means necessary to achieve the offense, he used his position as the child's father figure, as well as threats of groundings, and bribes to gain compliance and silence; appellant received oral sex from the victim and, on occasion, fondled her breasts; the victim viewed appellant as a father figure, often referred to him as "dad," and appellant acted as the child's caretaker; the onset of abuse was between the victim's 7th and 8th birthdays and continued until she was approximately 13 years old; there was no evidence of unusual cruelty or sadistic sexual behavior; the victim did not have any specific mental disabilities, but her young age and prepubescence made her vulnerable; the victim was the previous victim of abuse, and the abuser was appellant's son; appellant's prior adult offense history included multiple driving under the influence convictions, criminal trespass, and charges relating to appellant's violation of a protection from abuse order; the onset of abuse occurred when appellant was approximately 37 years old, and, as a result, he met the age criteria for the DSM-5 for a mental disorder and/or personality disorder; and appellant has a history of reckless and harmful behavior towards others. (***Id.*** at 19-21; SVP assessment report, 6/8/14 at 9-12.)

Ms. Lindemuth determined that appellant suffers from pedophilic disorder, nonexclusive type, as follows:

> Based on the information available, [appellant] meets the diagnostic criteria for Pedophilic Disorder Non-Exclusive which is considered a congenital or acquired condition. Pedophilic Disorder is defined by the Diagnostic and Statistical Manual – Fifth Edition (DSM-5)[2] as follows: "Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or **behaviors** involving sexual activity with a prepubescent child or children (generally age 13 years or younger). The individual has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty. The individual is at least age 16 year[s] and at least 5 years older than the child or children." It is important to note that some individuals with Pedophilic Disorder are only attracted to children, which is referred to as Exclusive Type, whereas others are also attracted to adults, this is referred to as Non-Exclusive Type. [Appellant's] behaviors are consistent [with] Pedophilia, Non-Exclusive Type.
>
> Individuals may deny experiences, impulses or fantasies involving children and additionally they may deny feeling distressed. The DSM-5 indicates such individuals may still be diagnosed with pedophilic disorder despite the absence of self-reported distress, provided there is evidence of recurrent behaviors persisting for 6 months and evidence the individual has acted on sexual urges or experienced interpersonal difficulties as a consequence of the disorder.

SVP assessment report, 6/8/14 at 13 (emphasis in original).

---

[2] The manual is a classification of mental disorders developed and published under the auspices of the American Psychiatric Association.

Ms. Lindemuth's determination that appellant suffered from pedophilic disorder, nonexclusive type, established the requirement that appellant had a mental abnormality required for making a determination that he was an SVP under SORNA. We further note that appellant's expert did not dispute Ms. Lindemuth's conclusion that appellant suffers from pedophilic disorder.

With regard to the predatory nature of appellant's acts, Ms. Lindemuth stated:

> [Appellant] was in a caretaker role, and was referred to as "Dad" by the victim. He was a trusted family member. The victim was a young prepubescent child who had been raped by [appellant's] juvenile son. She approached [appellant] for help, by disclosing the abuse perpetrated by his son. Instead of protecting the child, [appellant] took advantage of the situation and began to sexually assault the child. He used threats and bribes to gain the child's compliance and silence. It is this Board Member's opinion that [appellant's] behaviors meet the statute['s] definition of predatory.

SVP assessment report, 6/8/14 at 15.

The record, therefore, supports the finding that appellant's acts were predatory because he directed his acts at a child with who lived in his home and who viewed him as a father figure, and he used that relationship to facilitate his victimization. We note that appellant does not dispute Ms. Lindemuth's conclusion that appellant's acts were predatory in nature.

The gravamen of appellant's complaint is that there was insufficient evidence that appellant would re-offend. The crucial evidence regarding the question of whether appellant would re-offend was Ms. Lindemuth's

determination that appellant is a pedophile, a conclusion that appellant's expert did not disagree with. With respect to appellant's likelihood of re-offending, Ms. Lindemuth opined:

> According to [DSM-5], Pedophilia appears to be a lifelong condition. The behaviors may increase in response to psychosocial stressors, in relation to other mental disorders, or with increased opportunity to engage in Paraphilia. The course of pedophilic disorder may fluctuate, increase, or decrease with age but remains a lifelong condition.
>
> . . .
> It is this Board Member's opinion that Pedophilic Disorder is the impetus behind [appellant's] inability to maintain his own volitional/emotional control. The prolonged abuse signifies difficulty controlling his sexual impulses and failing to adequately exhibit control over his actions. The inability to control deviant impulses is a result of the disorder.
>
> . . .
> There are two pathways known to be associated with lifetime reoffending, chronic antisociality and sexual deviancy. The behavior pattern in the instant offense is consistent with chronic sexual deviancy. [Appellant] sexually assaulted the child victim over the course of several years which included multiple instances of oral sex and fondling. Pedophilic disorder is a long-term, persistent disorder and can impair or affect a person's ability to control such impulses, thus increasing the likelihood of re-offense. This pattern of behavior supports the conclusion that [appellant's] condition of Pedophilic disorder increases the likelihood of re-offending.

SVP assessment report, 6/8/14 at 14-15.

Here, appellant identifies "the main conflict" between the experts to be "their belief as to whether [a]ppellant was likely to re-offend in sexually

- 10 -

victimizing a prepubescent child." (Appellant's brief at 8.) Appellant contends that because appellant exhibited less than half of the factors required for consideration by the SOAB, the Commonwealth's evidence was insufficient. We disagree.

It is well settled that the presence or absence of an enumerated factor is not determinative in the SVP classification and that not all factors are relevant in every case. *Meals*, 912 A.2d at 222-223. Moreover, it is not our role to re-weigh the SVP classification factors, as appellant invites us to do. Our role is to view the evidence admitted at the SVP hearing and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth as verdict winner and to determine whether that evidence was sufficient to support the trial court's order classifying appellant as an SVP. We have done so, and based upon our careful review of the evidence and testimony presented at the SVP hearing, we find that the Commonwealth presented clear and convincing evidence to support the trial court's order that classified appellant as an SVP.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2016

- 11 -